Thomas Edwin Allaire, an Infant, by Ada A. Allaire, His Next Friend, v. St. Luke's Hospital, and St. Luke's Free Hospital.

| 76   441 |
| s184s359 |

1. Infants—*Injuries While in Ventre de sa Mere.*—An infant can not maintain an action for injuries received by it while in its mother's womb.

2. Same—*Regarded as in Esse by the Civil Law.*—The doctrine of the civil law and the ecclesiastical and admiralty courts, that an unborn child may be regarded as *in esse* for some purposes, when for its benefit, is a mere legal fiction, which does not appear to have been indulged in by the courts of common law, to the extent of allowing an action by an infant for injuries occasioned before its birth.

Mr. Justice Windes, dissenting.

Trespass on the Case, for injuries received before birth. Trial in the Superior Court of Cook County; the Hon. Farlin Q. Ball, Judge, presiding. Judgment for defendant on demurrer; appeal by plaintiff. Heard in this court at the March term, 1898. Affirmed. Mr. Justice Windes, dissenting. Opinions filed May 26, 1898.

Philetus Smith, attorney for appellant.

"Life is the immediate gift of God, a right inherent by nature in every individual; and it begins, in contemplation of law, as soon as the infant is able to stir in its mother's womb." 1 Blackstone, 130.

"An infant *en ventre sa mere* is supposed in law to be born for many purposes. It is capable of having a legacy, or a surrender of a copy-hold estate made to it. It may have a guardian assigned to it; and it is enabled to have an estate limited to its use, and to take afterwards by such limitation, as if it were actually born." 1 Blackstone, 130; Thellusson v. Woodford, 4 Vesey, Jr., 227, 319, 323.

"A child *in utero* is considered as living for its own benefit, but not to a fixed period of time." 2 De G., J. & S., 665.

"The principal aim of society is to protect individuals in those absolute rights which were vested in them by the immutable laws of nature. Hence it follows that the first and primary end of human laws is to maintain and regulate these absolute rights of individuals." 1 Blackstone, p. 105, Brown & Hadley's Commentaries—Waite's Notes.

"The absolute rights of individuals are those that belong to their persons in a state of nature, and which every person is entitled to enjoy." 1 Blackstone, 130.

In Phillips v. Herron, 55 Ohio St. 478, 45 N. E. Rep. 720, it was held that a child quick *in utero*, is a person in being. The case was one involving a construction of the Ohio statute of 1811, which in substance limits the entail. ment of property to "persons in being," and the question (on construction of a will) in substance was, whether or not the grandson, Maurice Dudley Phillips, quick *in utero* at the testator's death, was a "person in being" or not, under the statute named, the decision being that, within the meaning of the act, a child *in utero* at the testator's death is in being." Turley v. Turley, 11 O. S. 173; McArthur v. Scott, 113 U. S. 340.

"Every person ought to find a certain remedy in the laws for all injuries and wrongs which he may receive in his person, property or reputation; he ought to obtain, by law, '

right and justice freely, and without being obliged to pur-
chase it, completely and without denial, promptly and
without delay." Constitution of Illinois, 1870, Sec. 19, Art.
2, Bill of Rights.

LINDEN EVANS, attorney for appellees, contended that there
is no statute nor any common law authority to sustain this
action.    Dietrich v. Inhabitants, etc., 138 Mass. 14; Walker
v. Great Northern Ry. Co., 28 L. R. (Ire.), 69; Francis'
Legal Maxims.

The alleged analogy in chancery, although academic, is
inapplicable. Grotius de Equitate, Sec. 3; Heard v. Stamford,
Cas. Temp. Talb., 173, on p. 174; Pomeroy's Eq. Jur., Sec.
425; Story's Eq. Jur., Sec. 616; 10 and 11 William III.,
Chap. 16; Palmer v. Cracroft, 2 Vern., part II., 580.

The alleged analogy from criminal law is inapplicable.
Hale, P. C., 433; Rex v. Enoch, 5 Car. & P. 539; Rex v.
Poulton, 5 Car. & P. 329; Rex v. Brain, 6 Car. & P. 349;
4 Blackstone Com., *p. 198; Year Books, 1 Edw. III., 23
Pl. 18; Fitz. Abr., Enditement, Pl. 4; Fleta I, Ch. 35, Sec. 3;
Ill. Crim. Code, Sec. 3.

The alleged analogy from civil, ecclesiastical and admi-
ralty law is inapplicable.    Wharton, Neg. (1874), Sec. 9a, 10;
Benedict's Adm'r, 58, Secs. 111–113.

The declaration fails to show any legal duty of the defend-
ants, as a hospital, to the plaintiff, or any breach thereof.
Feoffees v. Ross, 12 Clark & F. 506; Holliday v. St.
Leonards, 11 C. B. (N. S.) 192; Gooch v. Association, 109
Mass. 567; McDonald v. Mass. Gen. Hospital, 120 Mass. 432;
Union Pacific Ry. Co. v. Artist, 60 Fed. Rep. 365; Hughes
v. Munroe (N.Y.), 4 N.E. Rep. 407; Joel v. Woman's Hospital,
35 N.Y. S. 37; Downs v. Harper, 25 L. R. A. 602; Williamson
v. Louisville, etc., 23 L. R. A. 200; 15 Ky. 629.

The plaintiff is estopped by the settlement with his mother.
A. & E. Ency., Vol. 16, p. 476; Dietrich v. Inhabitants,
etc., 138 Mass. on p. 17; Fleta I, Ch. 35, Sec. 2.

The proof of plaintiff's case is impossible.    American Text
Book of Surgery, 271; American Text Book, Children's

Diseases, 518, 771 and 818; Darwin's Descent of Man; Drummond's Ascent of Man; Havelock Ellis, Man and Woman; Beck. Med. Jour., Vol. I, 383; Wharton Ev. (2d Ed.) Vol. I, Sec. 441; Tracey Peerage, 10 Cl. & F. 1 *p. 191; Coke upon Littleton, 29 b; Paine's Case, 8 Rep. 34 (Law Inst. Ed., Vol. 4, p. 207).

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

The amended declaration in this case, omitting the caption, is as follows:

" The said plaintiff, Thomas Edwin Allaire, an infant of tender age, by Ada A. Allaire, his next friend, and Philetus Smith, his attorney, by leave of the court first had, for amended declaration, complains of the said defendants, both bodies politic and corporate, and doing business at the city of Chicago, in said county, under and by virtue of the laws of said State, in a plea of trespass on the case: For that, heretofore, to-wit: On or about the 2d day of February, A. D. 1896, at and in the said city, said defendants were possessed of and using a certain building there situate as a hospital for the care, curing and treatment of sick persons, and of ladies therein, during the time before, at and after accouchment and parturition and until convalescence thereafter, and for the care, careful treatment and medical diligence in the safe delivery of infants in *ventre de sa mere*, all for hire and reward in that behalf. And the said Ada A. Allaire, then within ten days, as near as may be, for the natural birth of plaintiff, as the said defendants then and there well knew and had knowledge, then and there, on said last named day, at the request and solicitation of the said defendants, for hire and reward in that behalf to be paid by her, became and was a patient of said defendants in said building, therein to be carefully kept, cared for, housed and medically treated until the birth of plaintiff, and during her convalescence thereafter; and for such hire and reward so to be paid, then and there became and was such patient of defendants, for the use and benefit of plaintiff, in that he

Allaire v. St. Luke's Hospital.

also should receive from said defendants all due care and treatment, and should be safely delivered by birth, in the course of nature, without personal harm.

And thereupon it then and there became and was the duty of defendants to carefully and comfortably house, shelter and keep the said Ada A. Allaire in said building, and to extend to and bestow upon her person great care and diligence before, during and after plaintiff's birth. All this for the well-being of the said Ada A. Allaire, as also for the benefit of the plaintiff, to the end and purpose that he also should receive great and due care from said defendants and be naturally born of his mother without injury or harm to his person.

And the plaintiff further avers that before, on and after the day first aforesaid, at and in the said building, the said defendants were possessed of and using a certain elevator, so called, for the conveyance of patients therein through a shaft from one floor of said building to other floors therein; and the said Ada A. Allaire, then being such patient, as aforesaid, on said day last named, and in obedience to defendants' request and direction so to do, entered into said elevator and upon the floor thereof, and then and there sat down upon a common, all-wooden chair on said floor, that had there been placed in its then position by defendants, to be carried and elevated thereon from the second floor of said building to the floor of the obstetrical department thereof above said second floor, she then and there being assured by defendants that it was and would be perfectly safe for her to be seated in said chair in its then position, to be carried upward in said elevator, and that no harm could come to her for so doing, defendants then and there well knowing that said Ada A. Allaire was then and there near to confinement for the natural birth of plaintiff.

And thereupon it became and was the duty of defendants to have and keep said elevator and shaft and each and every part thereof, in a proper, safe and secure condition, and to keep the said mother of plaintiff and the plaintiff, safely and without personal harm or injury in the use and

enjoyment thereof, and to so place and condition the said mother therein and upon said floor and chair, as that neither she nor the plaintiff, then in *ventre de sa mere*, should in any way be injured or personally harmed while therein and being carried thereby to said floor above, whither the said mother was then and there directed by defendants. Yet the defendants did not, nor would regard their duty in that behalf, but on the contrary thereof, negligently and carelessly, at the place and on the day last named and when and while the said mother of plaintiff, with all due care on her part, was then and there so conditioned and seated in said chair and being rapidly carried upward in said elevator, failed and neglected to have and keep said shaft, elevator and chair in a safe and secure condition and position, and to have and keep the car of said elevator enclosed, and then and there, carelessly, negligently and heedlessly failed to properly load and operate said elevator, and did then and there so carelessly and negligently operate the same that when and while the said Ada A. Allaire was so being rapidly carried upward therein and thereon, the top of said chair, suddenly and with great force, struck a projection in and on the side of said shaft, whereby said chair, with said mother thereon sitting, was instantly and with great power, crushed to the floor of said elevator car, said car then and there being unenclosed and open, and said mother of plaintiff and the plaintiff then and there with great force and violence thrown and hurled from and off said chair to the floor of said car and to the edge of said floor opposite said chair, and by reason thereof and the swift upward motion of said elevator car, the left limb of said mother was then and there and thereby thrown and caught between the edge of said floor and a projection in said shaft, and was then and thereby greatly cut, mangled, bruised, and the bones thereof broken, and said mother greatly and grievously bruised, hurt, jammed and wounded in her left hip, thigh, side and body, and other great personal injuries, by reason of said negligence of defendants, said Ada A. Allaire then and thereby received and sustained; and that

Allaire v. St. Luke's Hospital.

said mother, by reason of her said personal injuries, and the manner, way and time in which the same were so received and sustained, was then and there put in great terror and fear that death was then for herself and plaintiff, then unborn. So that and thereby, and as the direct, proximate and natural cause of said injuries to his said mother, said plaintiff was then and there, and by reason of defendant's said negligence, greatly injured, strained, bruised and wounded in his left limb, left side, left hip, left arm and left hand, so that at his birth on the 6th day of February, A. D. 1886, his left foot, left limb, left side and left hand were, and became, and hitherto have been, and still are, wasted, withered and atrophied, and his said foot smaller than natural by more than one-half, and made thereby to turn inward and the sole thereof upward, and his said limb shorter than natural by more than four inches, and his said hip, side and arm, by reason of said negligence and injuries, became and are made shrunken, atrophied and paralytic, and his said limb without flesh thereon, and from thence hitherto have so been and still are, and said plaintiff thereby greatly and sadly crippled for life, and in endeavoring to be cured and healed of his said injuries, has laid out and expended the sum of two thousand dollars ($2,000) and more (the said Ada A. Allaire having heretofore, for a valuable consideration, settled with the said defendants for, and released them from, all damages from said injuries to herself alone), to the damage of the plaintiff in the sum of fifty thousand dollars ($50,000), and therefore he brings his suit," etc.

A general demurrer was filed by the defendants, which was sustained by the court, and judgment was rendered for the defendants.

The action is not given by any statute, and if maintainable, it must be so by the common law, and therefore the question is, whether at common law the action can be maintained. Had the plaintiff at the time of the alleged injury, in contemplation of the common law, such distinct and independent existence that he may maintain the action,

or was he, in view of the common law, a part of his mother? If the former, it would seem the action can be maintained; but if the latter, not, because, if part of his mother, the injury was to her and not to the plaintiff.

Appellant's counsel has argued the case learnedly and with not a little industry, but has cited only two cases in which it was attempted to maintain actions involving the question presented here, namely: Dietrich, Administrator, v. Inhabitants, etc., 138 Mass. 14, decided in 1884; and Walker v. Great Northern Ry. Co., 28 L. R. (Ireland) 69, decided in 1891.

In the former case the facts were that the mother, when advanced four or five months in pregnancy, slipped and fell by reason of a defect in the highway, the consequence of which was a miscarriage. The plaintiff was alive when delivered, but was too little advanced in foetal life to survive its premature birth. The action was brought by the administrator of the deceased infant under a statute authorizing an action for the benefit of the mother or next of kin.

The trial and Supreme courts both held that the action could not be maintained, the latter court saying: "Taking all the foregoing considerations into account, and, further, that, *as the unborn child was a part of the mother at the time of the injury*, any damage to it, which was not too remote to be recovered for at all, was recoverable by her, we think it clear that the statute sued upon does not embrace the plaintiff's intestate within its meaning."

In Walker v. Great Northern Ry. Co., the statement of claim was, substantially, that Annie Walker, the mother of the plaintiff, while quick with child, viz., the plaintiff, became a passenger on the defendant's railway and was so received by the defendant, and that the defendant so carelessly and negligently conducted itself in carrying said Annie Walker and in managing its railway, that the plaintiff was thereby injured, crippled and deformed. A demurrer was sustained to the statement of claim, all the judges concurring in the opinion that it was defective in not showing a contractual relation between the plaintiff and the railway company, but

merely averring a contract between the mother of the plaintiff and the company. The question, however, whether such an action could be maintained by an infant, in its mother's womb at the time of the alleged injury, could, under any circumstances, be maintained, was discussed elaborately and with great learning both by court and counsel. O'Brien, C. J., after discussing the question, expressly declined to commit himself by an opinion, leaving it, as he said, "an open question" so far as he was concerned. Harrison, J., while basing his decision on the insufficiency of the statement of claim, says, in his opinion: "When the accident occurred, on the 12th June, the plaintiff was still unborn and had no existence apart from her mother, who was the only person whom the defendants contracted to carry on their line," etc. Johnson, J., in his opinion says: "As a matter of fact, when the act of negligence occurred, the plaintiff was not *in esse*, was not a person, or a passenger, or a human being. Her age and her existence are reckoned from her birth, and no precedent has been found for this action." Again, commenting on the claim of liability, the same learned judge says: "If it did not spring out of contract it must, I apprehend, have arisen, if at all, from the relative situation and circumstances of the defendant and plaintiff at the time of the occurrence of the act of negligence. But at that time the plaintiff had no actual existence, was not a human being and was not a passenger; in fact, as Lord Coke says, the plaintiff was then *pars viscerum matris*, and we have not been referred to any authority or principle to show that a legal duty has ever been held to arise toward that which was not *in esse* in fact, and has only a fictitious existence in law, so as to render a negligent act a breach of duty."

O'Brien, Associate J., in his opinion, says of the action: "It is admitted that such a thing was never heard of before; and yet the circumstances which would give rise to such a claim must at one time or another have existed." In Dietrich v. Inhabitants, etc., *supra*, the court say: "But no

case, so far as we know, has ever decided that if the infant survived it could maintain an action for injuries received by it while in its mother's womb." Appellant's counsel substantially admits that there is no precedent for the action. While it is true that this is not conclusive that the action may not be maintained, yet, in view of the fact that, as said by Mr. Associate Justice O'Brien, similar circumstances must have before occurred, it is entitled to great weight, especially when the right to maintain the action is, to say the least, doubtful. Mr. Associate Justice O'Brien, in Walker v. Great Northern Ry. Co., says: "The law is in some respects a stream that gathers accretions with time from new relations and conditions. But it is also a landmark that forbids advance on defined rights and engagements; and if these are to be altered, if new rights and engagements are to be created, that is the province of legislation and not decision." In this we fully concur. That a child before birth is, in fact, a part of the mother, and is only severed from her at birth, can not, we think, be successfully disputed. The doctrine of the civil law and the ecclesiastical and admiralty courts, therefore, that an unborn child may be regarded as *in esse* for some purposes when for its benefit, is a mere legal fiction, which, so far as we have been able to discover, has not been indulged in by the courts of common law to the extent of allowing an action by an infant for injuries occasioned before its birth.

If the action can be maintained, it necessarily follows that an infant may maintain an action against its own mother for injuries occasioned by the negligence of the mother while pregnant with it. We are of opinion that the action will not lie.

The judgment will be affirmed.

Mr. Justice Windes dissenting.

I am unable to concur in the conclusion of the majority of the court in this case. What was said by the learned judges in deciding the cases of Dietrich, 138 Mass. 14, and Walker, 28 Law Rep. (Ireland), 69, in so far as those opin-

ions may be applicable to the case at bar, was by way of argument, and, in my opinion, not necessary to the decision of the particular questions in those cases, and therefore not authority as precedents in the solution of the question here involved, except to the extent that the argument appeals to reason. In the Dietrich case the mother of the child was between four and five months advanced in pregnancy, and the child was too little advanced in fœtal life to survive its premature birth, died before it was separated from its mother, and was not directly injured, unless by a communication of the shock to the mother, nor was there any contract between the mother and the defendant which in any way related to the child or for its benefit in any respect. The court might well have held that under all these facts an action could not be maintained, without deciding broadly, as it did, that no action would lie for injuries received by the child while in its mother's womb. The opinion seems based largely on the fact that no decided case had ever held that such an action would lie, and for the further reason that the child was a part of the mother at the time of the injury.

In the Walker case there was no notice to the defendant railway company that carried the mother as a passenger, of her condition, and the contract of carriage, out of which its duty, if any, to the child arose, was made without any reference to the unborn child. This case might well have been decided, as it was by the learned Chief Justice, solely on the ground that there were no facts set out in the statement of claim which fixed the defendant with liability for breach of duty as carriers of passengers. The railway company, having no notice of the condition of the mother, of the child's existence within her womb, it might well be said, so far as concerned the company, the child was a non-entity. Not so however, in the case at bar, where the mother contracted with the defendants with express reference to her condition, her confinement being imminent, and necessarily, in the nature of things, her contract was with reference to her unborn child and its care.

At the common law it is well settled that one is liable as for murder or manslaughter, according to the particular facts of each case, when he willfully and maliciously injures a child in its mother's womb, and death of the child results from such injuries, provided it be born alive. In the Walker case, *supra*, the learned Chief Justice quotes from Blackstone's Com., viz.: "In all cases the crime includes an injury; every public offense is also a private wrong and somewhat more; it affects the individual and also affects the public. * * * Upon the whole, we may observe, in taking cognizance of all wrongs or unlawful acts, the law has a double view, viz., not only to redress the party injured, by either restoring him to his right if possible, or by giving him an equivalent, but also to secure to the public the benefit of society by preventing or punishing every breach and violation of those laws which the sovereign power has thought proper to establish for the government and tranquillity of the whole." Also from Stephen's Com., referring to the commission of crimes amounting to felony, viz.: "There still exists the remedy for the private wrong; even in cases of felony it is only suspended during the prosecution of the crime."

If the willful and malicious conduct of a person causing an injury to an unborn child resulting in its death, after it has been born alive, will fasten on that person the crime of murder or manslaughter, there seems to me no sound and logical reason, since the crime includes the injury to the child, and since the public offense is also a private and special wrong to the helpless infant, why, if the child should be so fortunate as to survive the injury, which, had it caused death after being born alive, would have made the wrong-doer a criminal before the law, the child should not have his action at law against this same wrong-doer for damages because of his tort.

It is the boast of the law that for every wrong it provides a remedy, but the law which says to the helpless infant, "If your injuries were inflicted, however wrongful, while you were sleeping peacefully in your mother's womb,

though pulsating with life and vigor, or while you were moving forward to the outer world in obedience to nature's law, with a power almost irresistible, though just beyond the light of day, still a part of your mother, there is no remedy for your wrongs, if you live through them, though crippled or deformed for life, but if you can only die because of your injuries, the man who wronged you shall be indicted for murder and punished," gives but scant recompense, gives no practical redress, no adequate remedy to the wronged child.   Such law is a reproach to civilization.   It seems illogical to say the action can not be maintained because the child is a part of the mother.   Long before it sees the light it is a living soul, pulsating with life, making its presence known by most vigorous action oftentimes, a distinct entity moving and having its being, though carried by the mother and attached to her by the umbilical cord.   Why may it not be wronged?  · Why may it not suffer injuries?   It can not be contended for a moment that the physician attending at the birth of a child would not be liable in damages to the child, if, after delivering it from its mother, but before he cut the connecting cord, he should willfully and maliciously wrench off both its arms.   Could it be said that such an injury was to the mother, and that she must sue for and recover the damages to her child in such a case, because the doctor had not severed the umbilical cord—because the child was still a part of the mother?   I think not.   Could it be successfully contended that for an injury to Chang, one of the famous Siamese twins, he could not maintain an action because he was a part of his brother Eng—that he was not a separate entity?   I think not.   Could it be contended that in such case Eng was the person to bring the suit, because the injury to his brother Chang was an injury to him, Eng?   I think it quite as reasonable to say that the mother can recover for injuries to her living, moving child, because contained in her womb or lying beside her after its birth, attached by the umbilical cord, as to say that in the case of an injury to one of the Siamese twins, the other could have brought suit.   History informs us that one of these

twins survived the other several hours, and medical author-
ities give numerous instances of living children being deliv-
ered from their mothers after life was extinct.  The child,
when capable of being born alive, is, in my opinion, a dis-
tinct entity, under the common law, and although no
decided civil case, so far as we know, has so held, humanity
and enlightened civilization demand that the common law,
as administered in Illinois in the nineteenth century, should
so declare.  I therefore think that though there is no pre-
cedent—no decided case like the one at bar—there is no
good reason, as matter of law, why the action will not lie
in behalf of this appellant.