## Theresa Joller Smith, Administratrix, Appellant, v. Albert Luckhardt and I. S. Trostler, Appellees.

### Gen. No. 40,357.

Opinion filed February 14, 1939.

LLOYD T. BAILEY, of Chicago, and CHARLES E. JACK, of Waukegan, for appellant; JOSEPH W. BAILEY, THOMAS C. HOLLYWOOD and J. THEODORE KIGGINS, all of Chicago, of counsel.

RAWLINS & WRIGHT, of Chicago, for appellees; BERNARD GENIS, of Chicago, of counsel.

Mr. Justice John J. Sullivan delivered the opinion of the court.

This action was originally brought by Theresa M. Joller, a minor, by her mother and next friend, Theresa M. Joller Smith, against defendants, Albert Luckhardt and I. S. Trostler, to recover damages because of personal injuries alleged to have been sustained by her prior to her birth. Suit was commenced July 20, 1937, approximately 13 years after the birth of said Theresa M. Joller. Motions to strike the original complaint were filed by both defendants and sustained. Plaintiff having died subsequent to the commencement of the suit, her death was suggested and leave given to file an amended complaint. Theresa Joller Smith, as administratrix of the estate of her deceased daughter, thereafter filed an amended complaint, which alleged in substance that the defendants were doctors; that upon being called to give medical treatment to the mother of Theresa M. Joller, they negligently diagnosed her condition as a tumor of the womb, when she was not so afflicted but was pregnant with the said Theresa M. Joller; that they negligently treated the mother of said Theresa M. Joller by administering 6 X-ray treatments of 45 minutes each, over a period of 4 months from the time said child was less than 4 months mature until she was more than 7 months mature; that said X-ray treatments were of such strength, force and violence as were intended to destroy a tumor and as a result of the negligence of the defendants, said child was burned, certain tissues of her body were destroyed, the bones of one ankle and certain vertebrae in her neck failed to mature, certain cells of her brain were destroyed, and she was born a permanent cripple and feeble-minded, developing only to the mental age of 2 years, although she lived to be 13 years of age.

Defendants' motions to dismiss the amended complaint on the ground of its insufficiency in that it ap-

peared from said amended complaint that the damages sought to be recovered were for alleged injuries to the decedent prior to her birth were sustained, plaintiff's cause of action was dismissed and judgment rendered against her for costs. It is from this judgment that plaintiff appeals.

Plaintiff's theory, as stated in her brief, is that "the fundamental rights of personal security and the pursuit of happiness, out-weigh in importance the transient rights of property, and that an unborn child, especially after it becomes quick, viable and alive, and when the destruction of the life of the mother does not necessarily end its existence, and at an age when if separated prematurely from its mother, by artificial means, it would be so far matured that it would live and grow naturally, that such a child has a right to recover for injuries sustained by negligence and malpractice."

Defendants' position is that "the amended complaint of plaintiff does not state a cause of action against the defendants, or either of them for it appears from said amended complaint that the plaintiff, as administratrix of the estate of the deceased, is seeking to recover damages because of alleged personal injuries claimed to have been sustained by said deceased while she was an unborn child. . . . Under the law such an action does not lie."

Conceding that it is the law of this State that an action of the character instituted here cannot be maintained, it is stated in plaintiff's brief that "the only question involved in this case is whether or not the highest courts of this state think the time has come to determine the legal rights of an unborn child upon scientific truth, or upon legal fiction. It is a matter of common knowledge that unborn children at the age of seven . . . months and younger, have lived, grown, and become healthy members of society, when

separated from their mothers by artificial means. Of this fact our courts and judges have been long and well advised. . . . As the justices of our courts have had time to think and consider the inequities of the apparent holdings in cases of this character, that an unborn child cannot recover for direct injuries received through negligence and malpractice, their line of thought has gradually turned toward the protection of such coming generations. They have been looking forward to the time when such children will become members of society. . . . We confidently feel that the court in this case will look beyond the stupid legal fiction which has failed to match legal remedy with irreparable wrong, and will take the only view consistent with logic, justice, and modern thought and medical science, and find that the time has come when the well-being, health and minds of our children are of at least as much importance and in need of care and protection as are their rights in property.''

The real and only question presented is whether a child after it is born may maintain an action for injuries occasioned before its birth. This identical question was presented in *Allaire v. St. Luke's Hospital,* 184 Ill. 359, which is not only squarely in point and decisive of the issues sought to be raised by plaintiff's complaint but is a leading case on the subject, which has been cited and followed by courts of review of many other jurisdictions in the following, among other cases: *Newman v. City of Detroit,* 281 Mich. 60, 274 N. W. 710; *Drobner v. Peters,* 232 N. Y. 220, 133 N. E. 567; *Stanford v. St. Louis-San Francisco Ry. Co.,* 214 Ala. 611, 108 So. 566; *Gorman v. Budlong,* 23 R. I. 169, 49 Atl. 704; *Buel v. United Railways Co.,* 248 Mo. 126, 154 S. W. 71; *Magnolia Coca Cola Bottling Co. v. Jordan,* 124 Tex. 347, 78 S. W. (2d) 944.

In the *Allaire* case, *supra,* plaintiff, Thomas Edwin Allaire, an infant, by Ada A. Allaire, his next friend,

brought suit against St. Luke's Hospital and St. Luke's Free Hospital to recover damages because of personal injuries claimed to have been sustained by said infant while in his mother's womb. In the declaration filed in that cause it was alleged that "the defendants were possessed of and using a hospital building as a hospital for the care and treatment of sick persons and of ladies during the time before, at and after accouchement and parturition and of convalescence thereafter, and for the care, careful treatment and medical diligence in the safe delivery of infants in *ventre de sa mere,* all for hire and reward"; that within approximately 10 days of the time calculated for the natural birth of plaintiff, his mother became and was a patient of defendants in said building; and that by reason of the negligence of the defendants in the operation of an elevator in such building in which she was riding she was thrown to the floor of said elevator and by reason thereof plaintiff was "then born and seriously injured and crippled for life." Defendants there filed a general demurrer to plaintiff's declaration, which was sustained by the trial court and judgment entered in their favor. Upon appeal to this court the judgment of the trial court was affirmed and the cause was then appealed to the Supreme Court. In affirming the judgments of the trial and Appellate Courts, our Supreme Court, adopting the opinion of the Appellate Court and affirming its judgment, said at pp. 365–368:

" 'The action is not given by any statute, and if maintainable it must be so by the common law, and, therefore, the question is whether, at common law, the action can be maintained. Had the plaintiff, at the time of the alleged injury, in contemplation of the common law, such distinct and independent existence that he may maintain the action, or was he, in view of the common law, a part of his mother? If the former, it would seem the action can be maintained; but if

the latter, not, because, if a part of his mother, the injury was to her and not to the plaintiff.

" 'Appellant's counsel has argued the case learnedly and with not a little industry, but has cited only two cases in which it was attempted to maintain actions involving the question presented here, namely, *Dietrich, Admr. v. Inhabitants, etc.*, 138 Mass. 14, (decided in 1884) and *Walker v. Great Northern Railway Co.*, 28 L. R. Ire. 69, (decided in 1891). In the former case the facts were, that the mother, when advanced four or five months in pregnancy, slipped and fell by reason of a defect in the highway, the consequence of which was a miscarriage. The plaintiff was alive when delivered, but was too little advanced in foetal life to survive its premature birth. The action was brought by the administrator of the deceased infant under a statute authorizing an action for the benefit of the mother or next of kin. The trial and Supreme Courts both held that the action could not be maintained, the latter court saying: "Taking all of the foregoing considerations into account, and further, that *as the unborn child was a part of the mother at the time of the injury*, any damage to it which was not too remote to be recovered for at all was recoverable by her, we think it clear that the statute sued upon does not embrace the plaintiff's intestate, within its meaning."

" 'In *Walker v. Great Northern Railway Co.*, the statement of claim was, substantially, that Annie Walker, mother of the plaintiff, while quick with child, became a passenger on the defendant's railway and was so received by the defendant, and that the defendant so carelessly and negligently conducted itself in carrying said Annie Walker and in managing its railway, that the plaintiff was thereby injured, crippled and deformed. A demurrer was sustained to the statement of claim, all the judges concurring in the opinion that it was defective in not showing a contractual rela-

tion between the plaintiff and the railway company, but merely averring a contract between the mother of the plaintiff and the company. The question, however, whether such an action could be maintained by an infant in its mother's womb at the time of the alleged injury could under any circumstances be maintained, was discussed elaborately and with great learning both by court and counsel. O'Brien, C. J., after discussing the question, expressly declined to commit himself by an opinion, leaving it, as he said, ''an open question,'' so far as he was concerned. Harrison, J., while basing his decision on the insufficiency of the statement of claim, says in his opinion: ''When the accident occurred on the 12th of June the plaintiff was still unborn and had no existence apart from her mother, who was the only person whom the defendants contracted to carry on their line,'' etc. Johnson, J., in his opinion says: ''As a matter of fact, when the act of negligence occurred the plaintiff was not *in esse,*—was not a person or a passenger or a human being. Her age and her existence are reckoned from her birth, and no precedent has been found for this action.'' Again, commenting on the claim of liability, the same learned judge says: ''If it did not spring out of contract, it must, I apprehend, have arisen, if at all, from the relative situation and circumstances of the defendant and plaintiff at the time of the occurrence of the act of negligence. But at that time the plaintiff had no actual existence,—was not a human being and was not a passenger in fact; as Lord Coke says, the plaintiff was then *pars viscerum matris,* and we have not been referred to any authority or principle to show that a legal duty has ever been held to arise toward that which was not *in esse* in fact and has only a fictitious existence in law, so as to render a negligent act a breach of duty.'' O'Brien, Associate J., in his opinion says of the action: ''It is admitted that such a thing

was never heard of before, and yet the circumstances which would give rise to such a claim must at one time or another have existed." In *Dietrich v. Inhabitants, etc., supra,* the court says: "But no case, so far as we know, has ever decided that if the infant survived it could maintain an action for injuries received by it while in its mother's womb."

" 'Appellant's counsel substantially admits that there is no precedent for the action. While it is true that this is not conclusive that the action may not be maintained, yet in view of the fact that, as said by Mr. Associate Justice O'Brien, similar circumstances must have before occurred, it is entitled to great weight, especially when the right to maintain the action is, to say the least, doubtful. Mr. Associate Justice O'Brien, in *Walker v. Great Northern Railway Co.,* says: "The law is, in some respects, a stream, that gathers accretions, with time, from new relations and conditions. But it is also a landmark that forbids advance on defined rights and engagements; and if these are to be altered,—if new rights and engagements are to be created,—that is the province of legislation and not decision." In this we fully concur. That a child before birth is, in fact, a part of the mother and is only severed from her at birth, cannot, we think, be successfully disputed. The doctrine of the civil law and the ecclesiastical and admiralty courts, therefore, that an unborn child may be regarded as *in esse* for some purposes, when for its benefit, is a mere legal fiction, which, so far as we have been able to discover, has not been indulged in by the courts of common law to the extent of allowing an action by an infant for injuries occasioned before its birth. If the action can be maintained, it necessarily follows that an infant may maintain an action against its own mother for injuries occasioned by the negligence of the mother while preg-

nant with it. We are of opinion that the action will not lie.' "

In the recent case of *Newman v. City of Detroit*, 281 Mich. 60, 274 N. W. 710, decided in 1937, where an action was brought to recover damages on account of the death of decedent alleged to have been caused by prenatal injuries sustained by him 22 days prior to his birth, and where a motion to dismiss the cause was denied by the court below, in reversing the decision of the trial court the Supreme Court of Michigan said at p. 711:

"Appellant claims that to permit such recovery, in view of the fact that it is not provided for at common law or by legislative enactment, would be judicial legislation on our part; that it would open the door to fraud and perjury; that the cause of physical or mental defects that appear at childbirth or thereafter may be congenital, or due to injuries prior or subsequent to the accident, on account of which liability is asserted, or may have been due to the use of instruments or other mishaps at parturition. Appellee, on the other hand, calls our attention to the criminal law, but there is no claim of any criminal liability and there is no statute governing civil liability. Appellee further points to the Survival Act (section 14040, Comp. Laws 1929), which provides that an action for personal injuries to a person should survive. It is admitted that decedent had viability at the time of the accident, but in order for an action to survive, it must have existed at the time of the person's death. We are also referred to the statutes of descent and distribution, which permit a child *en ventre sa mere* at the time of the death of the parent to inherit from such parent. These statutes are not applicable. Appellee further contends that where there is a wrong, there should be a remedy, and claims that the question of causation is a matter of proof, the same as in other actions for negligence. These arguments may well be addressed to the legislature.

"The question before us has been passed upon in other jurisdictions. In some inferior courts where decisions were reversed in the appellate courts and in *Kine v. Zuckerman,* 4 Pa. Dist. & Co. R. 227, recovery was allowed for prenatal injuries. However, the overwhelming weight of authority is to the contrary. *Dietrich v. Northampton,* 138 Mass. 14, 52 Am. Rep. 242; *Walker v. Great Northern Ry. Co.,* 28 L. R. 69 (Ireland); *Allaire v. St. Luke's Hospital,* 76 Ill. App. 441, 445, affirmed in 184 Ill. 359, 56 N. E. 638, 48 L. R. A. 225, 75 Am. St. Rep. 176; *Gorman v. Budlong,* 23 R. I. 169, 49 A. 704, 55 L. R. A. 118, 91 Am. St. Rep. 629; *Buel v. United Railways Co.,* 248 Mo. 126, 154 S. W. 71, 45 L. R. A. (N. S.) 625, Ann. Cas. 1914C, 613; *Lipps v. Milwaukee Electric Ry. & Light Co.,* 164 Wis. 272, 159 N. W. 916, L. R. A. 1917B, 334; *Stanford v. St. Louis-San Francisco Ry. Co.,* 214 Ala. 611, 108 So. 566; *Nugent v. Brooklyn Heights Ry. Co.,* 154 App. Div. 667, 139 N. Y. S. 367, appeal dismissed in 209 N. Y. 515, 102 N. E. 1107; *Drobner v. Peters,* 232 N. Y. 220, 133 N. E. 567, 20 A. L. R. 1503; *Magnolia Coca Cola Bottling Co v. Jordan,* 124 Tex. 347, 78 S. W. (2d) 944, 97 A. L. R. 1513. Plaintiff has no cause of action under the common law or under any statute.

"The order of the lower court denying the motion to dismiss is reversed, with costs to appellant, and the cause is remanded, with instructions to enter an order granting motion to dismiss."

In *Drobner v. Peters,* 232 N. Y. 220, 133 N. E. 567, an action was brought by an infant to recover damages alleged to have been sustained by him 11 days before his birth by reason of the negligence of the defendant. The defendant there filed a motion for a judgment on the pleadings, which was denied by the trial court. Defendant appealed and in holding that plaintiff's complaint did not state a cause of action and in reversing the order of the trial court the court of appeals said at pp. 567, 568:

"Defendant negligently permitted a coal hole in the sidewalk in front of his premises to remain uncovered. Plaintiff's mother fell into it. Plaintiff, in his mother's womb, sustained injuries. Born 11 days after the accident, he now brings this action. It is contended that at the time of the injury he was not a person but was a part of the body of his mother and that, as the injury was to his mother, he has no cause of action.

"Mr. Justice Holmes said in 1884 in *Dietrich v. Northampton,* 138 Mass. 14, 52 Am. Rep. 242, that no case, so far as he knew had ever decided that an infant could maintain an action for injuries received in the mother's womb. The great weight of authority is still against the plaintiff's contention that the unborn child has a right of immunity from personal harm (*Allaire v. St. Luke's Hospital,* 184 Ill. 359, 56 N. E. 638, 48 L. R. A. 225, 75 Am. St. Rep. 176; *Walker v. Great Northern Ry. Co.,* 28 L. R. Ir. 69; *Gorman v. Budlong,* 23 R. I. 169, 49 Atl. 704, 55 L. R. A. 118, 91 Am. St. Rep. 629; *Buel v. United Rys. Co.,* 248 Mo. 126, 154 S. W. 71, 45 L. R. A. [N. S.] 625, Ann. Cas. 1914C, 613; *Lipps v. Milwaukee, etc. Co.,* 164 Wis. 272, 159 N. W. 916, L. R. A. 1917B, 334), although much judicial argument has been advanced to support a contrary ruling (*Nugent v. Brooklyn Heights R. R. Co.,* 154 App. Div. 667, 139 N. Y. Supp. 367; dissenting opinion, Boggs, J., *Allaire v. St. Luke's Hospital, supra;* Beven on Negligence [3d Ed.] 73, 76).

"  .  .  .

"By a legal fiction or indulgence, a legal personality is imputed to an unborn child as a rule of property for all purposes beneficial to the infant after his birth (The George & Richard, L. R. 3 Ad. & Ecc. 466), but not for purposes working to his detriment (*Villar v. Gilbey,* [1907] A. C. 139, 145). By the criminal law, such being the solicitude of the state to protect life before birth, it is a great crime to kill the child after it

is able to stir in the mother's womb by any injury inflicted upon the person of the mother (Penal Law, sec. 1050). . . . Rights of ownership of property do not connote a duty of personal care to the inchoate owner, nor does the crime of causing the death of an unborn child connote liability to the child for personal injuries. When justice or convenience requires, the child in the womb is dealt with as a human being, although physiologically it is a part of the mother, but the law has been fairly well settled during its centuries of growth against the beneficence of an artificial rule of liability for personal injuries sustained by it.''

In *Dietrich v. Inhabitants of Northampton,* 138 Mass. 14, an action was brought by an administrator to recover damages because of the death of a child alleged to have resulted from injuries sustained prior to its birth. In affirming the judgment of the trial court that the action could not be maintained, the Supreme Court of Massachusetts, speaking through Mr. Justice Holmes, said at pp. 14–16:

''The mother of the deceased slipped upon a defect in a highway of the defendant town, fell, and has had a verdict for her damages. At the time, she was between four and five months advanced in pregnancy, the fall brought on a miscarriage, and the child, although not directly injured, unless by a communication of the shock to the mother, was too little advanced in foetal life to survive its premature birth. There was testimony, however, based upon observing motion in its limbs, that it did live for ten or fifteen minutes. Administration was taken out, and the administrator brought this action upon the Pub. Sts. c. 52, sec. 17, for the further benefit of the mother in part or in whole, as next of kin. The court below ruled that the action could not be maintained; and we are of opinion that the ruling was correct.

" . . .

"But no case, so far as we know, has ever decided that, if the infant survived, it could maintain an action for injuries received by it while in its mother's womb. Yet that is the test of the principle relied on by the plaintiff, who can hardly avoid contending that a pretty large field of litigation has been left unexplored until the present moment."

The foregoing authorities are conclusive on the question presented for our determination and plaintiff has cited no case and we have been unable to find one in which a court of review in this or any other jurisdiction has held that an action may be maintained by a living child for injuries suffered before its birth or by the administrator of the estate of a child, after its death, for the benefit of its heirs at law or next of kin for like injuries. Thus it appears that an action of this character may not be maintained unless and until the right to bring such an action is afforded by legislative enactment.

For the reasons stated herein the judgment of the circuit court is affirmed.

*Affirmed.*

BURKE, P. J., and FRIEND, J., concur.