(No. 32665.-

ELEANOR AMANN, Appellant, *vs.* ABEL FAIDY, Appellee.

*Opinion filed May 20, 1953—Rehearing denied September 21, 1953.*

FINN & GEIGER, of Waukegan, for appellant.

SNYDER, CLARKE & DALZIEL, of Waukegan, (GERALD C. SNYDER, of counsel,) for appellee.

Mr. CHIEF JUSTICE SCHAEFER delivered the opinion of the court:

The question in this case is whether there can be recovery for the wrongful death of a child who was negligently injured *en ventre sa mere* and who, after his birth, died as a result of those injuries. Because the Wrongful Death Act allows recovery only where the "act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages" (Ill. Rev. Stat. 1951, chap. 70, par. 1,) the result depends upon the right of one negligently injured *en ventre sa mere* to recover for those injuries. Holding that such an action would not lie, the circuit court of Lake County sustained a motion to strike the count of the complaint which asserted it, and entered judgment for the defendant on that count. The Appellate Court for the Second District first reversed, and then, upon the ground that modification of existing precedent was more appropriately the function of the court of last resort, allowed a rehearing and affirmed. (*Amann v. Faidy,* 348 Ill. App. 37.) We granted leave to appeal.

An initial question is raised by defendant's argument that the complaint contains no allegation that there was a living child who died subsequent to birth. The complaint was filed by Eleanor Amann, as administratrix of the estate of William Joseph Amann, deceased, and individually. The count in question alleged that on December 26, 1949, as the result of defendant's negligent operation of his automobile, the cars which plaintiff and defendant were driving collided, causing personal injuries to plaintiff and such injuries to William Joseph Amann, "a living human entity *en ventre sa mere,*" as to cause his death on January 26, 1950; that he left surviving as his next of kin his parents

and three brothers; that on January 18, 1951, plaintiff was appointed administratrix of the estate of William Joseph Amann, deceased, by the probate court of Lake County; that she duly qualified and has since acted as administratrix, and that she brought this action pursuant to the Wrongful Death Act for the benefit of the next of kin. In our opinion this complaint is hardly susceptible of the construction that plaintiff was appointed administratrix of the estate of a child who died before birth. In any event, defendant's motion to strike was required by section 45 of the Civil Practice Act to "point out specifically the defects complained of." (Ill. Rev. Stat. 1951, chap. 110, par. 169.) The motion did not attack the complaint on this ground. We therefore treat the complaint, as did the Appellate Court, as presenting a case of prenatal injuries which, after the child was born, caused its death.

The question thus presented has not been considered by this court since the decision in *Allaire* v. *St. Luke's Hospital,* 184 Ill. 359, (1900). This court then adopted the opinion of the Appellate Court, (*Allaire* v. *St. Luke's Hospital,* 76 Ill. App. 441, Mr. Justice Windes dissenting,) which relied upon *Dietrich* v. *Inhabitants of Northampton,* 138 Mass. 14, decided in 1884, and *Walker* v. *Great Northern Railway Co.* 28 L.R. (Ire.) 69, decided in 1891, both of which denied recovery for a prenatal injury. The basic reason assigned by the Appellate Court in the *Allaire case* and adopted by this court was that the courts of common law, while regarding an unborn child as *in esse* for some purposes, had not extended the doctrine to allow an action for injuries sustained before birth. Mr. Justice Boggs dissented, and his dissenting opinion has been heavily relied upon by the many courts which now recognize a right of action for injuries sustained by a viable child *en ventre sa mere.*

*Dietrich* v. *Inhabitants of Northampton,* 138 Mass. 14, appears to have been the first case either in England or the

United States to pass upon the right of an unborn child to recover damages for a tort. In that case, the mother of the deceased slipped and fell upon a defective highway in the defendant town. "At the time, she was between four and five months advanced in pregnancy, the fall brought on a miscarriage, and the child, although not directly injured, unless by a communication of the shock to the mother, was too little advanced in foetal life to survive its premature birth." It lived but ten or fifteen minutes. The administrator of the child's estate brought an action for the benefit of the next of kin. Mr. Justice Holmes, speaking for the court, said that, so far as known, no case had ever decided that, if the infant survived, it could maintain an action for injuries received while in its mother's womb and "that, as the unborn child was a part of the mother at the time of the injury, any damage to it which was not too remote to be recovered for at all was recoverable by her."

In *Walker* v. *Great Northern Railway Co. of Ireland,* 28 L.R. (Ire.) 69, a pregnant woman, who suffered an injury upon defendant's railway, gave birth to a deformed child. The question presented for decision was whether the child could maintain an action for its deformities caused by defendant's negligence. Two of the justices, following the *Dietrich case,* expressed the view that the child was not *in esse* at the time of the wrong, being neither a person, passenger, nor a human being. The other two regarded the action as one brought upon the contract of transportation with the mother, with no duty of care owed by the defendant carrier to the unborn child whose presence was unknown.

*Allaire* v. *St. Luke's Hospital,* 184 Ill. 359, and *Dietrich* v. *Inhabitants of Northampton,* 138 Mass. 14, were uniformly followed until 1933 when the Supreme Court of Canada, in *Montreal Tramways* v. *LeVéillé,* 4 D.L.R. 337, (1933) held that a child was entitled to recover for prenatal

injuries, rejecting the defenses (1) that the child was not *in esse* at the time of the accident, but was a part of the mother, and (2) that a contractual obligation with the child was lacking. Subsequently, decisions of the District Court for the District of Columbia, and in Ohio, Louisiana, Maryland, Georgia and New York, reflecting the realistic approach to the problem stated by Mr. Justice Boggs in his dissenting opinion in *Allaire* v. *St. Luke's Hospital,* 184 Ill. 359, have held that an unborn child, viable and capable of existing independently of the mother at the time injuries are wrongfully inflicted, may, after birth, maintain an action for such injuries. (*Bonbrest* v. *Kotz,* 65 Fed. Supp. 138, (1946) ; *Williams* v. *Marion Rapid Transit, Inc.* 152 Ohio St. 114, 87 N.E. 2d 334, (1949) ; *Cooper* v. *Blanck,* 39 S. 2d (La. App.) 352, (decided in 1923 but not released for publication until 1949;) *Damasiewicz* v. *Gorsuch* 79 Atl. 2d (Md.) 550, (1951) ; *Tucker* v. *Howard L. Carmichael & Sons, Inc.* 208 Ga. 201, 65 S.E. 2d 909, (1951) ; *Woods* v. *Lancet,* 303 N.Y. 349, 102 N.E. 2d 691, (1951) ; *Jasinsky* v. *Potts,* 153 Ohio St. 529, 92 N.E. 2d 809, (1951). California has reached the same result, influenced perhaps by a special statutory provision. (*Scott* v. *McPheeters,* 33 Cal. App. 629, 92 Pac. 2d 678, (1939).) And, in Minnesota it has been adjudged that an action lies for prenatal injuries to an unborn viable child even if the child be born dead. *Verkennes* v. *Corniea,* 229 Minn. 365, 38 N.W. 2d 838, (1949).

Cases to the contrary, all subsequent to the *Dietrich* and *Allaire cases,* denying a right of action for prenatal injuries, are *Gorman* v. *Budlong,* 23 R.I. 169, 49 Atl. 704, (1901) ; *Buel* v. *United Railways Co.* 248 Mo. 126, 154 S.W. 71, (1913) ; *Lipps* v. *Milwaukee Electric Railway & Light Co.* 164 Wis. 272, 159 N.W. 916, (recovery sought for a non-viable child) (1916) ; *Drobner* v. *Peters,* 232 N.Y. 220, 133 N.E. 567, (not adhered to in *Woods* v. *Lancet,* 303 N.Y. 349, 102 N.E. 2d 691,) (1921) ; *Stan-*

*ford* v. *St. Louis-San Francisco Railway Co.* 214 Ala. 611, 108 So. 566, (1926); *Magnolia Coca Cola Bottling Co.* v. *Jordan,* 124 Tex. 347, 78 S.W. 2d 944, (1935); *Newman* v. *City of Detroit,* 281 Mich. 60, 274 N.W. 710, (1937); *Smith* v. *Trostler,* 299 Ill. App. 100, (1939); *Berlin* v. *J. C. Penney Co., Inc.* 339 Pa. 547, 16 Atl. 2d 28, (1940); *Stemmer* v. *Kline,* 128 N.J.L. 455, 26 Atl. 2d 489 (but see dissenting opinion, 128 N.J.L. 459, 26 Atl. 2d 685,) (1942); *Bliss* v. *Passanesi,* 326 Mass. 461, 95 N.E. 2d 206, (1950); *Drabbels* v. *Skelly Oil Co.* 155 Neb. 17, 50 N.W. 2d 229, (1951).

Writers who have considered the question have not only long condemned and deplored the illogical rationale of the doctrine denying a right of action for prenatal injuries but have unanimously urged that a viable child, who survives birth, should be permitted, upon proper proof, to recover for injuries incurred before birth. Morris, Injuries to Infants En Ventre Sa Mere, 58 Cent. L.J. 143 (1904); Kerr, Action by Unborn Infant, 61 Cent. L.J. 364 (1905); Albertsworth, Recognition of New Interests in Law of Torts, 10 Cal. L. Rev. 461 (1922); Frey, Injuries to Infants En Ventre Sa Mere, 12 St. Louis L. Rev. 85 (1927); Straub, Rights of Action for Prenatal Injuries, 33 Law Notes 205 (1930); James, Scope of Duty in Negligence Cases, 47 N.W. Law Review 778, 786, (1953). See: Notes, 34 Harv. L. Rev. 549 (1921); 6 Cornell L.Q. 341 (1921); 44 Yale L.J. 1468 (1935); 20 Minn. L. Rev. 321 (1936); 36 Mich. L. Rev. 512 (1938); 34 Minn L. Rev. 65 (1949); 48 Mich. L. Rev. 539 (1950); 35 Cornell L. Q. 648 (1950); 1951 Wis. L. Rev. 518; 50 Mich. L. Rev. 166 (1951); 63 Harv. L. Rev. 173 (1949-50); 2 DePaul Law Rev. 97; Prosser on Torts, sec. 31, pp. 188-190 (1941).

When the *Allaire case* was decided in 1900, there were two cases available as precedents, and both of those cases had been but recently decided. Since that time many courts

have dealt with the problem, and their opinions have been supplemented by the analyses and comments of students of the problem. It is appropriate, therefore, that we re-examine the question in the light of the broader information now available.

As they emerge from the many opinions which have now considered the problem, the chief grounds urged in support of the rule denying a viable child a right of action to recover for prenatal injuries have been (1) the lack of precedent; (2) the difficulty of determining the existence of a causal relation between a prenatal injury and the death or the condition of the child and the consequent possibility of fictitious claims; (3) the absence of a duty to the unborn child because it is thought to have no separate being apart from its mother. And where the child has died after birth and an action is brought under a wrongful death statute, recovery has been denied on the ground that since the child injured *en ventre sa mere* could not recover for prenatal injuries, its parents or next of kin could not recover for its death. *Gorman* v. *Budlong,* 23 R.I. 169, 49 Atl. 704; *Buel* v. *United Railways Co.* 248 Mo. 126, 154 S.W. 71; *Newman* v. *City of Detroit,* 281 Mich 60, 274 N.W. 710; *Smith* v. *Trostler,* 299 Ill. App. 100; *Drabbels* v. *Skelly Oil Co.* 155 Neb. 17, 50 N.W. 2d 229.

Principal reasons advanced in support of allowing recovery where the injuries occur when the child is viable are: (1) an unborn viable child, being capable of independent physical existence, should be regarded as a separate entity from the mother; (2) the law recognizes the separate existence of an unborn child for the purpose of protecting his property rights and to protect him against criminal conduct; (3) a wrong is inflicted for which there is no remedy unless there is recognition of the legal right of a child to commence life unimpaired by physical or mental defects caused by the negligence of others while it was a viable child *en ventre sa mere;* and (4) lack of

precedent should not bar recovery where a wrong has been committed.

Turning, then, to the reasons which have prompted the denial of recovery, we consider first the alleged lack of common-law precedent. It has been said that Justice Holmes, unable to find any precedent for the action for prenatal injuries, believed that the common law afforded no remedy, whereas a more accurate statement, according to Salmond, Torts, 346 (10th ed., Stallybrass, 1945,) would have been that there was no English authority on either side of the question. As the Supreme Court of Georgia forcefully pointed out, there is no common-law precedent denying recovery: "Thus it is seen that Blackstone says that, in contemplation of the common law, life begins when the child is able to stir in the mother's womb. It can have a legacy, can own an estate, and a guardian can be assigned to it. It cannot seriously be denied that the purpose of the common law in allowing the appointment of a guardian for the unborn child is to make available processes of the law for the protection and preservation of the properties belonging to the child. There is nothing in the common law to indicate that it would withhold from such a child its processes for the purpose of protecting and preserving the person as well as the property of such child. It would therefore seem to us to be an unwarranted reflection upon the common law itself to attribute to it a greater concern for the protection of property than for the protection of the person.  *  *  *  If the killing of the unborn child is regarded by the law as being sufficient injury to society to justify taking the life of the perpetrator of the crime, then, to be logical and just to the injured child, the law must allow it to employ legal process and recover damages for the injury inflicted upon it. It would be contrary to every principle of right and justice, which are the very There is nothing in the common law denying such a right essence of law, to deny such rights to the injured child.

to the child." *Tucker* v. *Howard L. Carmichael & Sons, Inc.* 208 Ga. 201, 65 S.E. 2d 909 (1951).

To the same effect is this statement by the Maryland court in *Damasiewicz* v. *Gorsuch,* 79 Atl. 2d (Md.) 550 (1951) : "The only logical basis for denying recovery by a child for an injury while *en ventre sa mere* is that stated by Justice Holmes. He based it upon a common law which had no positive existence, but is derived from an isolated statement by Lord Coke, which is itself modified in the same sentence by the suggestion that the law in many cases has consideration for the unborn child by reason of the expectation of its birth. The will and inheritance cases recognize the rights of an unborn child, and so do the criminal cases. His right to claim damages in admiralty is established. All of these may be under adaptations of the civil law to the common law, but when incorporated in it, they become part of the common law. If we were considering a case of first impression anywhere, we would be unable to find that the common law denied the right. On the contrary, it would appear that, in so far as there was any common law on the subject, the right would be recognized under the general theory, *ubi jus ibi remedium."*

The argument based upon the difficulty of proof of a causal relation between the injury *en ventre sa mere* and the damage which subsequently becomes apparent has likewise been rejected. "The difficulty of obtaining proof of the wrong should prompt greater leniency in affording the remedy, rather than a denial of plain justice. We are not impressed with the reasoning that a clear remedy for an injustice should be denied because a wrong is not readily susceptible of proof." (*Scott* v. *McPheeters,* 33 Cal. App. 629, 92 Pac. 2d 678, (1939).) Concerning "the argument of convenience, based upon the difficulty of proof," the Maryland court made these observations in the *Damasiewicz case:* "It is probable that this would have been almost insurmountable in the days of Coke, Hardwicke and Black-

stone, and perhaps of Holmes, and may have influenced their conceptions of the law. Physicians of today would have less trouble with the problem, but apart from this, the right to bring an action is clearly distinguishable from the ability to prove the facts. The first cannot be denied because the second may not exist. Another suggestion, somewhat allied, is the fear that numerous faked or fraudulent claims will overwhelm the courts. This argument *ad terrorem* should have no weight to prevent legitimate claims from being heard. Fraud can be dealt with in this class of cases, just as in others, and the detection and elimination of faked contentions present no novel question to judicial bodies. Here again, modern medical knowledge will do away with much of the difficulty." 79 Atl. 2d (Md.) 550, 559.

The third ground upon which recovery has been denied is the assumed identity of mother and unborn child, and the consequent absence of any duty to the child. The *Dietrich case,* which originated the doctrine of nonliability, largely upon the ground that the unborn child is a part of its mother, has been both criticized and distinguished. One writer describes most of the opinion as "sheer dicta," saying, "The fact is that the infant lives with its mother while in its prenatal state rather than being a part of the mother." (Gaines, "The Infant's Right of Action for pre-Natal Injuries," 1951 Wis. L. Rev. 518.) A distinction frequently drawn is that the unborn child in the *Dietrich case* had not attained a state of viability, whereas the unborn children in recent cases sustaining a right of action were viable when injured. A viable *foetus* has been defined as one sufficiently developed for extra-uterine survival, normally a *foetus* of seven months or older. (Stedman, Medical Dictionary, 1234 (16th ed. Taylor, 1946).) "All authorities agree that at some time during the period of gestation, the infant, yet unborn, reaches a stage of development where it can live outside of the mother." Taylor, Principles and Practice of

Medical Jurisprudence, 34 (10th ed.). See: Dorland, The American Illustrated Medical Dictionary, 1625 (20th ed. 1945).

This basis of nonliability was disposed of by the New York Court of Appeals in *Woods* v. *Lancet,* 303 N.Y. 349, 102 N.E. 2d 691 (1951). There the court said: "To hold, as matter of law, that no viable foetus has any separate existence which the law will recognize is for the law to deny a simple and easily demonstrable fact. This child, when injured, was in fact, alive and capable of being delivered and of remaining alive, separate from its mother. We agree with the dissenting Justice below that 'To deny the infant relief in this case is not only a harsh result, but its effect is to do reverence to an outmoded, timeworn fiction not founded on fact and within common knowledge untrue and unjustified.' "

Upon a reappraisal of the question, we conclude that the reasons which have been advanced in support of the doctrine of nonliability fail to carry conviction. We hold, therefore, in conformity with the recent decisions of the courts of last resort of New York, Maryland, Georgia, Minnesota, and Ohio, and the District Court for the District of Columbia, that plaintiff, as administratrix of the estate of a viable child, who suffered prenatal injuries and was thereafter born alive, has a right of action against the defendant whose alleged negligence caused the injuries. *Allaire* v. *St. Luke's Hospital,* 184 Ill. 359, is overruled.

A further word is appropriate to dispose of the defendant's insistence upon Ill. Rev. Stat. 1951, chap. 28, par. 1, as a statutory bar to this action. That act provides: "That the common law of England, so far as the same is applicable and of a general nature, and all statutes or acts of the British parliament made in aid of, and to supply the defects of the common law, prior to the fourth year of James the First, excepting the second section of the sixth chapter of 43d Elizabeth, the eighth chapter of 13th

Elizabeth, and ninth chapter of 37th Henry Eighth, and which are of a general nature and not local to that kingdom, shall be the rule of decision, and shall be considered as of full force until repealed by legislative authority." Upon the basis of this statute defendant contends: "The power of this Honorable Court to adjudicate between litigants is derived from two sources, namely: the Common Law as it existed prior to March 24, 1606, and Statute Law. A cause of action for prenatal injuries was *unknown* at Common Law. There is no statute permitting such cause of action."

It is at once apparent that defendant's contention that the only available materials for decision are our own statutes and English decisions rendered before 1607 would, if adopted, drastically change our law. The complaint in this case would certainly fail to state a cause of action because negligence did not emerge as a separate basis of tort liability until two hundred years after 1607. (Prosser on Torts, sec. 28.) The development of the law of contracts would lie before us, for *Slade's case* (76 Eng. Repr. 1074) was not decided until 1602. The law of *quasi*-contracts began with *Moses* v. *Macferlan*, 97 Eng. Repr. 676, decided in 1760. The validity of a future interest in real property was first made to depend upon the period within which it would vest in the *Duke of Norfolk's case*, 22 Eng. Repr. 931, decided in 1682, and the present period of the rule against perpetuities became settled in *Codell* v. *Palmer*, 1 Clark & F. 372, decided in 1833. We would have no law of agency, for it, too, developed after 1607. (Holmes, Common Law, 228.) The list could be expanded.

What the statute adopted was not just those precedents which happened to have already been announced by English courts at the close of the sixteenth century, but rather a system of law whose outstanding characteristic is its adaptability and capacity for growth. The common law which the statute adopted "is a system of elementary rules and of

general judicial declarations of principles, which are continually expanding with the progress of society, adapting themselves to the gradual changes of trade, commerce, arts, inventions and the exigencies and usages of the country." *Kreitz* v. *Behrensmeyer,* 149 Ill. 496.

In rejecting the contention upon which the defendant now insists, this court pointed out more than a hundred years ago, "that if we are to be restricted to the common law, as it was enacted at fourth James, rejecting all modifications and improvements which have since been made, by practice and statutes, except our own statutes, we will find that system entirely inapplicable to our present condition, for the simple reason that it is more than two hundred years behind the age." *Penny* v. *Little,* 3 Scam. 301, 304.

The judgments of the Appellate Court and the circuit court of Lake County are each reversed and the cause is remanded to the circuit court, with directions to overrule defendant's motion to strike count II of the complaint.

*Reversed and remanded, with directions.*