Argued November 16, affirmed December 7, 1955

## MALLISON *v.* POMEROY
291 P. 2d 225

*Wm. C. Ralston* and *W. K. Phillips,* of Portland, argued the cause for appellant. With them on the brief was Leo Levenson, of Portland.

*Graham Walker,* of Portland, argued the cause for respondent. With him on the brief were Earle V. White, Jr. and Emerson U. Sims, of Portland.

Before Tooze, Acting Chief Justice, and Rossman, Lusk, Brand, Latourette and Perry, Justices.

LATOURETTE, J.

The question posed is whether or not plaintiff has a cause of action for injuries sustained by her while she was a viable child in her mother's womb. The term "viable child" means a child capable of an independent existence without the mother's womb.

The case arises out of injuries causing cerebral palsy, a condition commonly known as spastic, allegedly sustained by plaintiff on December 25, 1948, while she was an unborn child, her mother then being six months pregnant. Plaintiff's complaint is predicated upon the negligence of defendant when his car crashed into the rear of a car in which her mother was seated. Approximately ten days after the collision the mother bore twins, one of whom immediately died. Defendant appeals from a judgment in favor of plaintiff, the surviving child.

The question presented is one of first impression in this state. There are two divergent schools of thought on this subject. The mother case in this country which denied liability is *Dietrich v. Northampton* (1884), 138 Mass 14, 52 Am Rep 242. The decision was primarily based on the proposition that until birth the child was a part of the mother.

This decision was followed by decisions in ten jurisdictions which are collated in 10 ALR2d, page 1060. Among them are the following: *Allaire v. St. Luke's Hospital* (1900), 184 Ill 359, 56 NE 638; *Buel v. United*

*R. Co.* (1913), 248 Mo 126, 154 SW 71; *Drobner v. Peters* (1921), 232 NY 220, 133 NE 567; and *Mays v. Weingarten* (1943), 82 NE2d 421. It is noteworthy that the highest courts of the above jurisdictions later overruled the earlier decisions and held for liability. See *Williams v. Marion Rapid Transit, Inc.* (1949), 152 Ohio St 114, 87 NE2d 334, 10 ALR2d 1051; *Woods v. Lancet* (1951), 303 NY 349, 102 NE2d 691, 27 ALR2d 1250; *Amann v. Faidy* (1953), 415 Ill 422, 114 NE2d 412; *Steggal v. Morris* (1953), 363 Mo 1224, 258 SW2d 577.

We call attention to the further following cases adhering to the modern view and which allow recovery: *Verkennes v. Corniea* (1949), 229 Minn 365, 38 NW2d 838, 10 ALR2d; *Tucker v. Howard L. Carmichael & Sons, Inc.* (1951), 208 Ga 201, 65 SE2d 909; *Damasiewicz v. Gorsuch* (1951), 197 Md 417, 79 A2d 550; *Rainey et al. v. Horn* (1954), 72 So2d 434. It is significant that the Massachusetts Supreme Court in the case of *Bliss v. Passanesi* (1950), 326 Mass 461, 95 NE2d 206, when the question was again before it, stated: ''We do not intimate what our decision would be if the question were presented for the first time.'' From the foregoing it is thus seen that a majority of the jurisdictions considering the subject favor a right of action for prenatal injuries.

It would serve no useful purpose and would unnecessarily prolong this opinion if we reviewed the numerous cases dealing with the subject. A mere perusal of the above listed cases will disclose that the courts have dealt extensively with every phase of the question being considered. We do wish, however, to refer to several cases which, in our opinion, are outstanding and merit consideration. In *Amann v. Faidy*,

supra, Mr. Justice Schaefer, speaking for the Illinois Supreme Court, wrote as follows:

"As they emerge from the many opinions which have now considered the problem, the chief grounds urged in support of the rule denying a viable child a right of action to recover for prenatal injuries have been (1) the lack of precedent; (2) the difficulty of determining the existence of a causal relation between a prenatal injury and the death or the condition of the child and the consequent possibility of fictitious claims; (3) the absence of a duty to the unborn child because it is thought to have no separate being apart from the mother.  *  *  *

"Principal reasons advanced in support of allowing recovery where the injuries occur when the child is viable are: (1) an unborn viable child, being capable of independent physical existence, should be regarded as a separate entity from the mother; (2) the law recognizes the separate existence of an unborn child for the purpose of protecting his property rights and to protect him against criminal conduct; (3) a wrong is inflicted for which there is no remedy unless there is recognition of the legal right of a child to commence life unimpaired by physical or mental defects caused by the negligence of others while it was a viable child en ventre sa mere; and (4) lack of precedent should not bar recovery where a wrong has been committed."

He then directs attention to the opinion of Mr. Justice Holmes in the case of *Dietrich v. Northampton,* supra, and states:

"Turning, then, to the reasons which have prompted the denial of recovery, we consider first the alleged lack of common-law precedent. It has been said that Justice Holmes, unable to find any precedent for the action for prenatal injuries, believed that the common law afforded no remedy, whereas a more accurate statement, according to

Salmond, Torts, 346 (10th Ed., Stallybrass, 1945), would have been that there was no English authority on either side of the question.''

We call attention to the fact that this case overruled an earlier Illinois Supreme Court decision in the case of *Allaire v. St. Luke's Hospital,* supra.

Reading further from Mr. Justice Schaefer's opinion, we quote:

"Upon a reappraisal of the question, we conclude that the reasons which have been advanced in support of the doctrine of nonliability fail to carry conviction. * * *"

We next quote from the opinion of Mr. Chief Justice Duckworth of the Supreme Court of Georgia, in the case of *Tucker v. Howard L. Carmichael & Sons Inc.,* supra, as follows:

"Thus it is seen that Blackstone says that, in contemplation of the common law, life begins when the child is able to stir in the mother's womb. It can have a legacy, can own an estate, and a guardian can be assigned to it. It cannot seriously be denied that the purpose of the common law in allowing the appointment of a guardian for the unborn child is to make available processes of the law for the protection and preservation of the properties belonging to the child. There is nothing in the common law to indicate that it would withhold from such a child its processes for the purpose of protecting and preserving the person as well as the property of such child. It would therefore seem to us to be an unwarranted reflection upon the common law itself to attribute to it a greater concern for the protection of property than for the protection of the person. * * *"

"* * * * *

"* * * If the killing of the unborn child is regarded by the law as being sufficient injury to

society to justify taking the life of the perpetrator of the crime, then, to be logical and just to the injured child, the law must allow it to employ legal process and recover damages for the injury inflicted upon it. It would be contrary to every principle of right and justice, which are the very essence of law, to deny such rights to the injured child. There is nothing in the common law denying such a right to the child.''

In *Damasiewicz v. Gorsuch,* supra, the court of appeals of Maryland, through the opinion of Mr. Chief Justice Marbury, had the following to say:

''The only logical basis for denying recovery by a child for an injury while enventre sa mere is that stated by Justice Holmes. He based it upon a common law which had no positive existence, but is derived from an isolated statement by Lord Coke, which is itself modified in the same sentence by the suggestion that the law in many cases has consideration for the unborn child by reason of the expectation of its birth. The will and inheritance cases recognize the rights of an unborn child, and so do the criminal cases. His right to claim damages in admiralty is established. All of these may be under adaptations of the civil law to the common law, but when incorporated in it, they become part of the common law. If we were considering a case of first impression anywhere, we would be unable to find that the common law denied the right. On the contrary, it would appear that, in so far as there was any common law on the subject, the right would be recognized under the general theory, ubi jus ibi remedium.''

The New York court of appeals in *Woods v. Lancet,* supra, in an opinion by Mr. Justice Desmond (which overruled an earlier New York decision), stated:

''What, then, stands in the way of a reversal here? Surely, as an original proposition, we would, today, be hard put to it to find a sound reason for

the old rule. Following Drobner v. Peters (supra) would call for an affirmance but the chief basis for that holding (lack of precedent) no longer exists. And it is not a very strong reason, anyhow, in a case like this. Of course, rules of law on which men rely in their business dealings should not be changed in the middle of the game, but what has that to do with bringing to justice a tort-feasor who surely has no moral or other right to rely on a decision of the New York Court of Appeals? Negligence law is common law, and the common law has been molded and changed and brought up-to-date in many another case. * * *''

''* * * * *

''* * * To hold, as matter of law, that no viable foetus has any separate existence which the law will recognize is for the law to deny a simple and easily demonstrable fact. This child, when injured, was in fact, alive and capable of being delivered and of remaining alive, separate from its mother. We agree with the dissenting Justice below that 'To deny the infant relief in this case is not only a harsh result, but its effect is to do reverence to an outmoded, time-worn fiction not founded on fact and within common knowledge untrue and unjustified.' ''

In arriving at a proper decision in this case we are not handicapped by lack of precedent as was Mr. Justice Holmes in the Dietrich case, as is disclosed by our extensive citation of cases.

■ Likewise, we do not think that the difficulty of determining the existence of a causal relation should be a bar to recovery inasmuch as the establishment of proximate cause obviously is an evidentiary problem, which, in the light of modern medical science, is not insurmountable.

■ In Oregon we have recognized by statute the separate entity of an unborn child by protecting him in

his property rights and against criminal conduct, and we can see no logical reason why a viable child should not be protected for injuries sustained through the tortious acts of another. See ORS 111.010; ORS 114.250; ORS 114.260; and ORS 163.060.

■ Article I, Section 10 of our constitution, provides for remedy by due course of law for every person for injury done to him in his person. In this connection, we quote from *Williams v. Marion Rapid Transit, Inc.,* supra, it being the first decision by a court of last resort in the United States promulgating the so-called modern doctrine, as follows:

> "To hold that the plaintiff in the instant case did not suffer an injury in her person would require this court to announce that as a matter of law the infant is a part of the mother until birth and has no existence in law until that time. In our view such a ruling would deprive the infant of the right conferred by the Constitution upon all persons, by the application of a time-worn fiction not founded on fact and within common knowledge untrue and unjustified."

We conclude that plaintiff has a cause of action. In so holding, we are supported not only by the best reasoned modern judicial opinions, but also by the unanimous statements of the textbook and law review writers, including Professor Prosser. See *Amann v. Faidy,* supra.

The judgment of the learned trial judge is affirmed.

BRAND, J., concurs in result.