### Carroll v. Skloff

502

*Klovsky & Kuby,* for plaintiff.

*R. J. van Roden,* for defendant.

SPORKIN, J., February 14, 1964. — This matter is before the court on defendant's preliminary objections in the nature of a demurrer to plaintiff's complaint in trespass.

The allegations of the complaint which are material to a consideration of these preliminary objections may be summarized as follows:

Plaintiff, father of an unborn child, sued defendant, a physician, claiming damages in behalf of the child's estate and as next of kin,[1] on the asserted ground that defendant had negligently destroyed the infant in utero; that defendant, following complaint by plaintiff's wife of vomiting and abdominal pain and the

---

[1] From the caption and opening paragraph of the complaint, it is clear that the father, Kenneth Carroll, has obtained letters of administration on the estate of the fetus, designated as Baby Carroll, and has instituted this action in the capacity of administrator. ". . . such ex parte action is not determinative of the question of the right of the plaintiff to maintain the present action": Wendt v. Lillo, 182 F. Supp. 56, 59 (1960).

The complaint pleads two causes of action. In the first cause, recovery in damages is sought in behalf of the next of kin under the wrongful death statutes, Act of April 26, 1855, P. L. 309, as amended, 12 PS §1602. In the second cause, recovery is sought under the survival statutes, Fiduciaries Act of April 18, 1949, P. L. 512, art. VI, sec. 601, et seq., 20 PS §320.601.

diagnosing of her ailment as a uterine tumor, had performed an operation and in its course had discovered, removed and negligently caused the death of a "viable fetus" of 10 weeks' gestation.

As the basis for the preliminary objections, defendant asserted that the complaint stated no cause of action in that it lacked an averment of live birth or even of any birth.

After oral argument and consideration of the briefs submitted, we sustained defendant's preliminary objections and dismissed the complaint. An appeal having been taken, this opinion is filed in accordance with the requirement of Supreme Court Rule No. 43.

The issue, therefore, resolves itself into a determination of whether the estate of a 10-week fetus can maintain an action under either the wrongful death or survival statutes against the person who negligently caused the death or destruction of the fetus.

The problem of liability of an alleged tortfeasor for prenatal injuries has aroused considerable discussion among the courts of this country within the past century. The first American court that passed on this question was Massachusetts in Dietrich v. Northampton, 138 Mass. 14, 52 Am. Rep. 242 (1884). That case was instituted under a wrongful death statute for the death of a nonviable fetus [2] which, although it showed signs of life for a few moments, was regarded to have been born dead. There, the court through Justice Oliver Wendell Holmes, later elevated to the United States Supreme Court, denied a child's right to seek recovery for tortiously inflicted prenatal injuries upon the concept that an unborn child was merely part of its

---

[2] The term "viable," which refers to the stage of development of the fetus, is defined and extensively discussed in this opinion, infra.

mother's body and, therefore, not a person in being to whom a duty of care would be owed.

Our research discloses that this question had not been before the appellate courts of our Commonwealth until 1940. In that year, our Supreme Court, in considering the problem in the case of Berlin v. J. C. Penney Company, Inc., 339 Pa. 547 (1940), denied recovery to an infant for injuries received while en ventre sa mere.[3] In his opinion, Mr. Chief Justice Schaffer, relying on the holding in Dietrich v. Northampton, supra, and the rulings in the appellate courts of Illinois (1900), New York (1921), and New Jersey (1940), stated, at pages 548 and 549:

"This question has never been presented to an appellate court in Pennsylvania. The courts of review of other states have consistently held that such an action cannot be maintained . . .

". . . As a result, an injury to an unborn child was looked upon as an injury to the mother. It is true that the unity of mother and child has been relaxed in modern times and that today for some beneficial purposes a child en ventre sa mere is considered as born. However, there is no warrant for holding, independent of a statute, that a cause of action for pre-natal injuries to a child accrues at birth: 4 Restatement, Torts, Sec. 869."

Prior to 1949, no American court of final jurisdiction had held that a child had a common-law action for injuries incurred before birth. Within the past 15 years, however, the prevailing winds of opinion shifted to the opposite quarter, and in 1949 the Supreme Court of Ohio in Williams v. Marion Rapid Transit, 152 Ohio

---

[3] That action was brought after the birth of the child, by the father as next friend (before the effective date of the Pennsylvania Rules of Civil Procedure) and included an action for damages by the father in his own right.

114, 87 N. E. 2d 334, 10 A.L.R. 2d 1051, held that a viable fetus was a "person" within the meaning of the Ohio Constitution, and thus, after birth, the infant could maintain an action for tortious prenatal injuries. That case [4] was one of first impression in that court and overruled prior decisions which had held to the contrary.

Shortly thereafter, in the same year, the Supreme Court of Minnesota in Verkennes v. Corniea, 229 Minn. 365, 38 N. W. 2d 838, 10 A.L.R. 2d 634 (1949),[5] held that the personal representative of a stillborn child [6] could maintain an action for its wrongful death where the child was viable at the time of the injury.

Since 1949, a number of other States have overruled their former decisions and have allowed recovery for prenatal injuries,[7] and courts of several States which

---

[4] The complaint in Williams alleged that the infant plaintiff, while a viable child in her mother's womb, was seriously and permanently injured when her mother was thrown from the steps of defendant's bus, by its starting up before she had an opportunity to alight.

[5] The decisions before 1949 are collated in the Verkennes opinion; annotations following that case and the Williams case in 10 A. L. R. 2d amplify the survey.

[6] Stedman's Medical Dictionary (18th ed.) defines stillbirth as "the delivery of a dead fetus".

[7] Woods v. Lancet, 303 N. Y. 349, 102 N. E. 2d 691, 27 A. L. R. 2d 1250 (Ct. App. 1951) (reversing Drobner v. Peters, 232 N. Y. 220, 133 N. E. 567, 20 A. L. R. 1502 (1921)); Steggall v. Morris, 363 Mo. 1224, 258 S. W. 2d 577 (1953) (reversing Buel v. United Rys. Co. of St. Louis, 248 Mo. 126, 154 S. W. 71 (1913)); Tursi v. New England Windsor Co., 19 Conn. Sup. 242, 111 A. 2d 14 (Super. Ct. 1955), and Prates v. Sears, Roebuck & Co., 19 Conn. Sup. 487, 118 A. 2d 633 (1955) (refusing to follow Squillo v. City of New Haven, 14 Conn. Sup. 500 (Super. Ct. 1947)); Amann v. Faidy, 415 Ill. 422, 114 N. E. 2d 412 (1953) (reversing Allaire v. St. Luke's Hospital, 184 Ill. 359, 56 N. E. 638 (1900)). See also Rodriquez v. Patti, 415 Ill. 496, 114 N. E. 2d 721 (1953).

have considered the question for the first time have also permitted such recovery.[8]

And in 1960, Pennsylvania, recognizing the trend toward allowing a recovery for prenatal injuries, expressly overruled Berlin v. J. C. Penney Co., Inc., supra, holding in Sinkler v. Kneale, 401 Pa. 267 (1960), that one who negligently harms an unborn infant is liable to the child when the child is born alive,[9] with a most vigorous dissent, however, by Chief Justice, then Justice, Bell. In Sinkler, the mother, one month pregnant with the infant plaintiff, while driving her car was injured when defendant's car negligently struck her vehicle. The infant plaintiff was subsequently born a Mongoloid and an action was instituted in his behalf on the theory that the infant plaintiff's Mongolism was a result of prenatal injuries suffered in the automobile accident.

In his brief, counsel for plaintiff argues: "The decision (in Sinkler) makes no distinction between born,

---

[8] Tucker v. Howard L. Carmichael & Sons, Inc., 208 Ga. 201, 65 S. E. 2d 909 (1951); Damasiewicz v. Gorsuch, 197 Md. 417, 79 A. 2d 550 (Ct. App. 1951); Mitchell v. Couch, 285 S. W. 2d 901 (Ky. 1955); Worgan v. Greggo & Ferrara, Inc., 50 Del. 258, 128 A. 2d 557 (1956); Rainey v. Horn, 221 Miss. 269, 72 So. 2d 434 (1954); Poliquin v. MacDonald, 101 N. H. 104, 135 A. 2d 249 (1957); Mallison v. Pomeroy, 205 Ore. 690, 291 P. 2d 225 (1955); Hall v. Murphy, 236 S. C. 257, 113 S. E. 2d 790 (1960).

[9] The opinion at page 269 of Sinkler states: "By now all four jurisdictions on which Berlin relied have reversed themselves and at present uphold the right of action when the child is born alive: Woods v. Lancet, 303 N. Y. 349 (1951), 102 N. E. 2d 691; Amann v. Faidy, 415 Ill. 422 (1953), 114 N. E. 2d 412; Smith v. Brennan and Galbraith, 31 N. J. 353 (1960), 157 A. 2d 497, and Keyes v. Construction Service, Inc., 340 Mass. 633, 165 N. E. 2d 912 (1960)," and states at page 272, citing Prosser on Torts (2nd ed. 1955, §36, pp. 174-75), that the trend toward allowing recovery in cases where the child is born alive "is so definite and marked" that right of recovery in such cases should now be recognized in Pennsylvania.

born alive or stillborn in its pronouncement of the right of recovery." He urges, therefore, that Sinkler sustains his position that recovery may be had in the instant case in behalf of the estate and next of kin of Baby Carroll. This contention, in the light of the factual situation presented by the allegations in plaintiff's complaint, is clearly untenable. In the Sinkler case, the child was born alive and survived thereafter; and the opinion, in discussing the various cases on the topic, more than once speaks of birth alive.

We deem it appropriate at this point to note that plaintiff's complaint in the case at bar alleges that Baby Carroll was "a viable fetus of approximately 10 weeks gestation". The phrases "viable fetus" and "10 weeks gestation", are clearly an irreconcilable inconsistency, since we find no medical authority holding that a 10-week fetus is viable within the accepted medical meaning of that word. Stedman's Medical Dictionary, 18th ed. page 1495, defines a "viable fetus" as one "capable of living, denoting a fetus sufficiently developed to live outside of the womb, i.e., a fetus of seven months or older". And the holding of recent cases is to the same effect. Cf. Turi v. New England Windsor Co., 19 Conn. Sup. 242, 111 A. 2d 14; Mitchell v. Couch, 285 S. W. 2d 901, 905; Wendt v. Lillo, 182 F. Supp. 56, 67 (1960). Particularly applicable is West v. McCoy, 233 S. C. 369, 105 S. E. 2d 88 (1958), in which the court stated, pages 90, 91:

"There is a medical distinction between the term 'embryo' and the phrase 'viable fetus'. The embryo is the fetus in the earliest stages of development but the expression 'viable fetus' means the child has reached a stage of development where it can live outside the female body as well as within it. A fetus generally comes a viable child between the sixth and seventh month of its existence . . ."

See also 15 Rutgers Law Review 61 (1960), in an article by Robert J. DelTufo of the New Jersey bar, where it is said that a fetus, to be viable, must have "the capacity to live even if . . . [the mother] dies". Thus, it is clear that the fetus of only 10 weeks gestation, as in the instant case, *was not viable* at the time of its demise.

If the child had subsequently been born alive, its lack of viability would have been immaterial.[9a] In the Sinkler case, the mother was pregnant only a month at the time the injuries were inflicted, and, obviously, at that time the fetus could not possibly have been viable; yet the court permitted recovery. But we repeat that in Sinkler the child was born alive.[10]

Sinkler, in our view, sanctions a cause of action on behalf only of an infant, born alive, to seek recompense for harm tortiously inflicted at any stage of the infant's fetal existence. We find nothing in Sinkler that would even remotely suggest a right of action for the wrongful death of an unborn infant due to injuries tortiously inflicted at a stage of gestation at which the fetus was not yet viable, nor is the opinion, from a review of the cases cited therein, susceptible of that interpretation.

The cases referred to and relied upon in the opinion in Sinkler fall into a number of categories. Of the 18

---

[9a] See Sinkler, page 273.

[10] Shedding further light on this difficult problem are discussions in 64 Dickinson Law Review at page 149, Prosser on Torts (2nd Edition 1955), at page 174, and the annotation in 27 A. L. R. 2d at page 1256.

Although Dietrich has been universally cited for the proposition that there is no cause of action for prenatal injury, the actual holding of the case does not, in our opinion, provide direct authority for denying recovery to a child who suffers prenatal injuries, but survives.

cases cited, 12 [11] involved infants born alive; of these 12, all but one [12] conditioned recovery upon live birth as a requisite. Of the six other cases, four [13] involved the death of the infant during childbirth or immediately prior to delivery. Of the two remaining cases, one [14] involved a wrongful death action where the fetus was viable (we are unable to ascertain the precise stage of development of the fetus at the time of its destruction); and in the last case[15] the court, in a one-page opinion, expressly set forth viability as a condition of recovery. There is no clue as to whether the fetus survived the injuries.

Hence, it is to be observed that the cases cited in the Sinkler opinion permitting recovery, were conditioned either upon live birth or upon viability at the time of destruction of the fetus, and we cannot assume that the Supreme Court intended its holding in Sinkler to have greater scope than the very cases which it cited, and upon which its decision was predicated. As we have heretofore stated, no inference can be drawn that the court in Sinkler intended to sanction a right of action for recovery for the death of an unborn nonviable fetus, and certainly not for a 10-week old unborn fetus as in the case before us.

---

[11] Scott v. McPheeters, 33 Cal. App. 2d 629, 92 P. 2d 678 (1939); Prates v. Sears, Roebuck & Co., supra; Amann v. Faidy, supra; Cooper v. Blanck, 39 So. 2d 352 (La. App., 1923); Damasiewicz v. Gorsuch, supra; Keyes v. Construction Service, Inc., supra; Steggall v. Morris, supra; Smith v. Brennan & Galbraith, supra; Woods v. Lancet, supra; Mallison v. Pomeroy, supra; Hall v. Murphy, supra; Williams v. Marion Rapid Transit, Inc., supra.

[12] Mallison v. Pomeroy, supra, involved live birth but made no mention of survival as a condition of recovery.

[13] Tucker v. Carmichael & Sons, supra; Mitchell v. Couch, supra; Verkennes v. Corniea, supra; Rainey v. Horn, supra.

[14] Poliquin v. MacDonald, supra.

[15] Worgan v. Greggo & Ferrara, Inc., supra.

Plaintiff has cited 12 cases, which he urges support his position. Of these, five were cited in Sinkler, and we have already mentioned them.[16] Of the remaining seven cases cited by plaintiff,[17] we find, with the exception of one [18] case, that they are clearly distinguishable from the instant suit, since in all these decisions the fetus was viable at the time of demise and viability was expressly set forth as a condition of recovery.[19]

Gullborg v. Rizzo, footnote 17, supra, one of the cases cited by plaintiff in support of his position, has no application to the factual situation before us. There, the fetus was six months old at the time of its destruction and, hence, was obviously viable.

Significantly, both plaintiff's and our own research has uncovered only one case (Porter v. Lassiter, footnote 17, supra), in which neither viability nor live birth occurred, but damages were allowed. That was a 1955 Georgia case, based on a statute permitting a mother to recover "for the homicide of a child, minor or sui juris." The mother filed suit alleging that at the time of an automobile accident she was six weeks pregnant, and that three months later she miscarried. De-

---

[16] The Mitchell, Verkennes, Poliquin, Rainey and Worgan cases, supra.

[17] Valence v. Louisiana Power & Light, (La. App.) 50 So. 2d 847 (1951) ; Porter v. Lassiter, 91 Ga. App. 712, 87 S. E. 2d 100 (1955) ; Stidam v. Ashmore, 109 Ohio App. 431, 167 N. E. 2d 106 (1959) ; Wendt v. Lillo, supra; Gullborg v. Rizzo, W. D. of Pa. 61376 Dec. 1961; Gorke, Admr., v. LeClere, 23 Conn. Sup. 256, 181 A. 2d 448 (1962) ; Hale v. Manion, 189 Kan. 143, 368 P. 2d 1 (1962).

[18] Porter v. Lassiter, supra.

[19] By way of demonstration that the cases cited by plaintiff do not support his argument that recovery may be had in the instant case, it is sufficient to refer to Verkennes v. Corniea, supra. This case has been stressed by plaintiff as a leading authority. It is also referred to in Sinkler. There (Verkennes) recovery by the personal representative of a *still-born child* was allowed because it was known to have been viable at the time of the injury.

fendant interposed a demurrer to the complaint, contending that the law did not recognize such a cause of action. The court cited the Georgia Criminal Code permitting prosecutions for "foeticide," defined as the willful killing of an unborn child so far developed as to be "quick." The latter term, the court said, was established in the State to mean able to move in the mother's womb. By analogy to the criminal law, the court ruled that recovery for the death of the stillborn child could be had if the child was "quick," though not necessarily viable; and the demurrer was overruled to permit a jury to find whether or not the child was "quick."

We may well question that decision, under that State's own statute, by querying whether a six weeks' embryo is a "minor child," for whose death the statute permits recovery. Furthermore, we find a decision (Mace v. Jung, 210 F. Supp. 706 (1962)) to the direct contrary and in accord with the prevailing rule. There, a mother suffered a spontaneous abortion of a "nonviable four to four and one-half months' fetus" the day after the accident. The United States District Court for Alaska, pointing out that the child was nonviable and was delivered dead, dismissed the action.

Finally, plaintiff argues that viability is unnecessary to support his cause of action. This argument clearly is without merit, since in our view to so hold would run counter to the prevailing rule [20] which obtains in those cases involving unborns, indeed, counter to the

---

[20] It is interesting to note that the Rutgers Law Review article, supra, on the subject of actions for wrongful death as it applies to unborns, has the following to say:

"As to the viability requirement, all the jurisdictions, except Georgia, in which a right of action is either expressly or inferentially sanctioned, require as a prerequisite to suit that the foetus was 'viable' when the fatal injury was inflicted. Georgia requires only that the infant was 'quick' in the womb."

very cases plaintiff cites. Nor was Justice Bok's pronouncement in Sinkler that viability has "little to do with the basic right to recover" in that case intended to apply to the factual situation presented by plaintiff's complaint before us. In our view, the ruling in Sinkler does not oppose the almost universal rule of viability applicable to unborns.

In Mace the same argument with respect to viability was advanced by plaintiff as is made here. The court, after reviewing a number of decisions of other States, including Sinkler v. Kneale, said, page 708:

"However, the reasoning of these decisions is that in such cases there is no real way of determining whether or not a fetus was viable at the time of injury unless it was immediately born, and therefore the viability rule is impossible of practical application; and that a *surviving child* should have a right of action for prenatal injuries, even though not viable at the time of the injury, for the reason that it would be unjust or too harsh to deny it. This *situation is clearly distinguishable for an action for wrongful death where the child does not survive the injury.*

"In this case there being no question but that the child was not viable and capable of separate existence at the time of the injury complained of, no cause of action exists . . ." (Italics supplied.)

In view of the foregoing, we have concluded that the unfortunate Baby Carroll in the instant case was neither viable, despite the allegations to the contrary in the complaint, nor born alive, and, accordingly, we have sustained the preliminary objections and dismissed the complaint.